UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
PRIME CONTRACTORS INC.,

                                     Plaintiff,

            -against-

APS CONTRACTORS INC, GOCE BLAZESKI, and
NORTH AMERICAN SPECIALTY INSURANCE
COMPANY,

                                Defendants.

-----------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

22-CV-1581
(Kuntz, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

       In this action, Plaintiff Prime Contractors Inc. alleges that Defendants APS Contractors

Inc. ("APS") and APS's principal, Goce Blazeski (together, the "APS Defendants"), as well as

Defendant North American Specialty Insurance Company[1] ("NASIC"), failed to remit payment or

otherwise perform in accordance with the terms of agreements entered into in connection with the

improvement of properties owned by the New York City Housing Authority ("NYCHA"). *See*

*generally* Complaint, Dkt. No. 1. As to the APS Defendants, Plaintiff asserts claims for breach of

contract, *quantum meruit*, unjust enrichment, and account stated. *Id.* at 21-32. As to NASIC,

Plaintiff asserts claims for breach of bond and attorneys' fees pursuant to New York State Finance

Law § 137. *Id.* at 32-34.

       Currently before this Court, on referral from the Honorable William F. Kuntz, United

States District Judge, is NASIC's motion to dismiss the Complaint pursuant to Fed. R. Civ. P.

12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure

to state a claim upon which relief can be granted. *See generally* Docket No. 24; Referral Order

---

[1] The corporate entity has since been renamed Swiss Re Corporate Solutions American Insurance
Corporation. Dkt. No. 24 at 6.

dated August 23, 2024.

For the reasons set forth below, this Court respectfully recommends that NASIC's motion to dismiss the Complaint be **DENIED**.

## I.    BACKGROUND

### A.    Relevant Facts

Plaintiff is a New York corporation with a principal place of business in Ozone Park, New York.  Dkt. No. 1 at ¶ 3.  APS is a New Jersey corporation with a principal place of business in Paterson, New Jersey.  *Id.* at ¶ 4.  Mr. Blazeski, during all relevant times, served as "[p]resident, owner, principal, officer, and/or director" of APS and resides in New Jersey.  *Id.* at ¶¶ 5-6.  NASIC is an insurance company "licensed to issue labor and material payment bonds in the State of New York"—though NASIC operates out of a principal place of business located in Philadelphia, Pennsylvania.  *Id.* at ¶ 7.

In 2018, NYCHA sought to "restore the building envelopes of [32] buildings" comprising a Brooklyn housing complex known as the Breukelen[2] Houses (hereinafter, the "Breukelen Project.").  *Id.* at ¶ 8; Dkt. No. 25 at 9.  On March 15, 2018, NYCHA entered into 2 agreements with the APS Defendants (the "NYCHA-APS Agreement") whereby the APS Defendants would serve as a general contractor overseeing the Breukelen Project.  *Id.* at ¶ 8.  Prior to the execution of the NYCHA-APS Agreement, NYCHA required APS to obtain a payment bond.  Dkt. No. 25 at 7.  The APS Defendants sought and obtained a payment bond from NASIC—which served as surety.  Dkt. No. 1 at ¶ 9.  The payment bonds, issued to NYCHA by APS as principal on January

---

[2] Although not relevant to this Court's evaluation of the facts or the legal issues presented herein, the Court notes that according to the New York-Historical Society, Brooklyn was named after Breukelen, a small village in the Netherlands.  *See How Did the Boroughs Get Their Names?*  NEW-YORK HISTORICAL SOCIETY MUSEUM & LIBRARY, https://www.nyhistory.org/community/borough-names (last visited Oct. 1, 2024).

12, 2017, promised NYCHA that APS would promptly remit payment for labor performed and services rendered by all entities engaged in the execution of the Breukelen Project. *Id.* at ¶¶ 9-11. The payment bonds also conferred a direct right of action against APS and/or NASIC upon "[a]ll persons who have performed labor, rendered services or furnished materials and supplies." *Id.* at ¶¶ 10-11.

Thereafter, the APS Defendants engaged Plaintiff to "furnish, install, rent and, subsequently, dismantle sidewalk sheds and scaffolding" at the Breukelen Project. Dkt. No. 25 at 9; Dkt. No. 1 at ¶ 12. As outlined below, the APS Defendants and Plaintiff entered into a series of agreements governing the installation and rental of sidewalks sheds and pipe scaffolding at the Breukelen Project.

As to the sidewalk sheds, Plaintiff agreed to install (and later dismantle) a series of sidewalk sheds for 15 buildings at the Breukelen Project. *See* Dkt. No. 1 at ¶¶ 12-77; Dkt. No. 25 at 11-13. APS Defendants also agreed to pay a monthly rental fee to Plaintiff for the period between the installation and dismantling of the sheds. Dkt. No. 1 at ¶¶ 12, 16; Dkt. No. 25 at 11. Pursuant to the parties' agreement (the "Sidewalk Shed Agreement"), Plaintiff's monthly rate for the rental of the sidewalk sheds following installation was set as "5% from the total cost of the installed sidewalk sheds, plus tax." Dkt. No. 1 at ¶ 16.

As to pipe scaffolding, Plaintiff agreed to provide, install, and subsequently dismantle a series of pipe scaffolding for 13 buildings at the Breukelen Project. *See* Dkt. No. 1 at ¶ 79. The APS Defendants also agreed to pay a monthly rental fee for the period between installation and dismantling. *Id.* at ¶ 81. Pursuant to the parties' agreement (the "Scaffolding Agreement"), Plaintiff's monthly rate for the rental of the pipe scaffolding following installation was set as "5% from the total cost of the stalled pipe scaffolding, plus tax." *Id.*

Pursuant to the Sidewalk Shed Agreement, Plaintiff purports to have performed its end of the agreement by installing sidewalk sheds at 15 buildings within the Breukelen Project between July 23, 2018 and August 15, 2019. Dkt. No. 1 at ¶¶ 18-32. Further, 8 of the 15 installed sidewalk sheds have been dismantled to date. *Id.* at ¶¶ 33-40. As of the date of the Complaint, the 7 remaining sidewalk sheds have not been dismantled by Plaintiff and remain in use for the alleged benefit of the APS Defendants. *Id.* at ¶¶ 41-47.

Plaintiff asserts that Defendants have failed to remit payment for the installation and dismantling of the sidewalk sheds pursuant to the Sidewalk Shed Agreement. *Id.* at ¶¶ 48-77. Plaintiff also asserts that Defendants have failed to remit payment for the monthly rental fee of the sidewalk sheds pursuant to the Sidewalk Shed Agreement. *Id.*

Additionally, pursuant to the Scaffolding Agreement, Plaintiff purports to have performed its end of the agreement by installing scaffolding on 13 buildings within the Breukelen Project between October 3, 2018 and December 30, 2019. *Id.* at ¶¶ 83-95. Further, 8 of the 13 installed pipe scaffoldings have been dismantled to date pursuant to the parties' agreement. *Id.* at ¶¶ 96-103. As of the date of the Complaint, 5 of the 13 pipe scaffoldings have not been dismantled by Plaintiff and remain in use for the alleged benefit of APS Defendants. *Id.* at ¶¶ 104-108.

Plaintiff contends that Defendants have allegedly failed to remit payment for the installation and dismantling of the pipe scaffolding installed pursuant to the Scaffolding Agreement. *Id.* at ¶¶ 109-134. Plaintiff also alleges that Defendants failed to remit payment for the monthly rental fee of the pipe scaffolding pursuant to the Scaffolding Agreement.

Plaintiff submitted a claim to NASIC (which served as surety) to recover "for the amount of the unpaid labor" resulting from APS Defendants' failure to remit payment. *Id.* at ¶¶ 136-139. On "or about" March 15, 2019, Plaintiff and NASIC entered into a settlement agreement (the

"Settlement Agreement") whereby NASIC paid Plaintiff $876,000 in exchange for a release from Plaintiff's claim. *Id.* at ¶ 140.

**B.    Procedural History**

Plaintiff commenced this action on March 22, 2022. *See generally* Dkt. No. 1. On March 23, 2022, summonses were issued as to all Defendants. Dkt. No. 8. APS was served on March 25, 2022 and was expected to answer the Complaint by April 15, 2022. Dkt. No. 14. Similarly, Mr. Blazeski was served on May 9, 2022 and was expected to answer the Complaint by May 30, 2022. To date, however, APS Defendants have failed to appear, answer, move, or otherwise respond to the Complaint. An Entry of Default was entered against the APS Defendants by the Clerk of Court on April 23, 2024. Dkt. No. 30. Plaintiff filed a motion for default judgment against the APS Defendants which remains pending before this Court. Dkt. No. 31; *see also* Referral Order dated May 28, 2024.

Plaintiff served NASIC on May 9, 2022. Dkt. No. 15. Following an extension and a request for a briefing schedule (Dkt. Nos. 20, 22), the Court ordered NASIC to file its motion to dismiss by August 12, 2022. Dkt. Nos. 21-23.

**C.    The Motion to Dismiss**

**A.    NASIC's Motion to Dismiss**

On August 12, 2022, NASIC filed the instant motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim against NASIC and APS Defendants. *See generally* Dkt. No. 24.

In its motion, NASIC rests on three arguments: (i) Plaintiff's purported release of claims executed for NASIC's benefit bars Plaintiff's claims; (ii) Plaintiff's assignment of claims to NASIC bars Plaintiff's claims against APS; and (iii) NASIC has no obligations regarding claims

brought against Mr. Blazeski. NASIC also argues that the Complaint expressly incorporated (i) the two payment bonds described *supra* in Section I.A, (ii) the Settlement Agreement, and (iii) Plaintiff's "Release Assignment of Claim and Lien Waiver in favor of NASIC" (hereinafter, the "Release"). Dkt. No. 24-5 at 6-7.[3]

First, NASIC argues that the execution of the Settlement Agreement and the Release between the parties is a sufficient basis to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* at 10. NASIC asserts that Plaintiff fails to dispute the existence of the Settlement Agreement—which purportedly resolves disputes arising from the Breukelen Project. *Id.* NASIC points to the Complaint as evident acknowledgment of the receipt of a sum certain from NASIC pursuant to the Settlement Agreement. *Id.* Since Plaintiff acknowledges that it has already been paid a sum certain by NASIC, NASIC contends that such an acknowledgment arises to an express reference to a release and settlement payments in the Complaint. *Id.* at 11. Therefore, NASIC argues that this Court should enforce the terms of the Release—which it defines as "broad" and encompassing "future and unknown claims"—against Plaintiff. *Id.* at 11-12. As NASIC contends, enforcement of the Release against Plaintiff "deprives [] Plaintiff of standing." *Id.* at 12-3.

Next, NASIC asserts that this Court should take judicial notice of the Settlement Agreement and the Release in resolving its motion. *Id.* at 15-16. NASIC asserts that the Settlement Agreement and Release were incorporated by reference, are undisputably authentic, and bear directly on the viability of Plaintiff's claims. *Id.* at 14-16.

Finally, although NASIC does not represent APS, NASIC argues that the Complaint should be dismissed as to APS since Plaintiff assigned all "rights, claims, demands . . . of every kind, character and description" that Plaintiff has or may later have against APS. *Id.* at 17. NASIC

---

[3] Page citations are to the ECF-stamped pages, unless otherwise noted.

asserts that Plaintiff's enforceable assignment of claims deprived Plaintiff of any claims for "labor, materials, leased equipment or the maintenance thereof" that could have been maintained against APS. *Id.* According to NASIC, Plaintiff lacks standing to sue APS and therefore, this Court lacks subject matter jurisdiction over Plaintiff's claims against APS.

### B.    Plaintiff's Opposition

Opposing dismissal, Plaintiff first argues that neither the Settlement Agreement nor the Release and assignment of claims bar Plaintiff's 11 claims because the Complaint seeks to recover for services provided by Plaintiff *after* the execution of the Settlement Agreement. Dkt. No. 25 at 8 (emphasis in original). Plaintiff contends that the Settlement Agreement intended to only resolve the outstanding payment for services owed by APS as of the date of the Settlement Agreement— not for services and payment rendered and due that occurred following the execution of the Settlement Agreement. *Id.* at 8-9. Plaintiff argues that the Settlement Agreement applied only to Plaintiff's claims "that were then in controversy; specifically, the sums then due by APS to [Plaintiff]." *Id.* at 17. Plaintiff contends that it thus follows that the Settlement Agreement could not have—and did not—settle receipts that were not yet due. *Id.* at 17-19.

Next, Plaintiff asserts that—under New York law—the scope of the applicable release and assignment of claims is limited by the terms of the Settlement Agreement and only apply to "matters in controversy" resolved by the Settlement Agreement. *Id.* at 21-22. Specifically, Plaintiff asserts that the Release failed to include language encapsulating claims that are "both known and unknown" and does not reference labor costs and "rentals incurred by [Plaintiff]" following the execution of the Release and assignment of claims. *Id.* at 22.

Moreover, Plaintiff asserts that NASIC's motion should be denied because this Court may not take judicial notice of the Settlement Agreement or the Release as neither document (i) was

ever attached as an exhibit to the Complaint, (ii) was incorporated into the Complaint by reference, (iii) can be judicially noticed, and (iv) was relied on by Plaintiff to form the bases of any of its 11 claims.

## II.    LEGAL STANDARDS

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Doe No. 1 v. Putnam Cnty.*, 344 F. Supp. 3d 518, 526 (S.D.N.Y. 2018) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)).

### A.    Fed. R. Civ. P. 12(b)(1)

"When a party moves for dismissal under Rule 12(b)(1) and on other grounds, courts consider the Rule 12(b)(1) challenge first." *Whyte v. Bayview Loan Servicing, LLC*, No. 21-CV-3301 (PKC) (LB), 2022 WL 4484664, at *3 (E.D.N.Y. Sept. 27, 2022) (cleaned up). "This is because if a court determines that it lacks subject-matter jurisdiction, then the defendant's 'other defenses and objections become moot and do not need to be determined.'" *Id.* (quoting *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019)).

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (internal

quotation marks omitted)).

In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," and refrain from "drawing from the pleadings inferences favorable to the party asserting jurisdiction." *Whyte*, 2022 WL 4484664, at *3 (cleaned up). "The party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Lee v. Banks*, No. 23-CV-5800 (JLR), 2024 WL 1657908, at *3 (S.D.N.Y. Apr. 17, 2024) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)). "The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based." *Marvin v. Allen*, No. 23-CV-5947 (KMK), 2024 WL 4290722, at *3 (S.D.N.Y. Sept. 24, 2024) (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Marvin*, 2024 WL 4290722, at *3 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

"[W]here a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, however, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial." *Marvin*, 2024 WL 4290722, at *3 (*citing Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017)). If the extrinsic evidence presented by a defendant is material and controverted, the Court must make

findings of fact in aid of its decision as to standing.  *Carter*, 822 F.3d at 57.

### B.    Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id*. at 570, if a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed."  *Id.*; *see also Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020 ("[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."); *Marvin*, 2024 WL 4290722, at *3 (same).

In evaluating a Rule 12(b)(6) motion, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012) ).  "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff,

taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials.  Generally, [courts] do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'"  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.") (internal quotation marks omitted).

## III.  **DISCUSSION**

### A.    **The Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1)**

NASIC moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing because a settlement agreement, release, and assignment of claims executed by the parties purportedly bars Plaintiff's claims.  Dkt. No. 24-5 at 16-17.  "Although a motion under Rule 12(b)(1) is the proper mechanism to challenge Article III standing, the Second Circuit has made clear that a challenge to contractual standing—a party's right to relief for breach of contract— implicates the merits of the claim rather than a court's subject-matter jurisdiction."  *Buffalo Xerographix, Inc. v. Hartford Ins. Grp.*, No. 1:20-CV-520 (GWC), 2021 WL 2003110 (W.D.N.Y. May 19, 2021), *aff'd Buffalo Xerographix, Inc. v. Sentinel Ins. Co., Ltd.*, No. 21-1502, 2022 WL 4241191 (2d Cir. Sept. 15, 2022) (citing *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210-12 (2d Cir. 2020)).  "Contractual standing is a prudential limitation on the Court, rather than a constitutional one," because as the Second Circuit has articulated:

> Contractual standing is distinct from Article III standing and does not implicate subject-matter jurisdiction. Article III standing speaks to the power of a court to adjudicate a controversy; contractual standing speaks to a party's right to relief for breach of contract.  Although the question of whether [defendant] breached a contract with [plaintiff] depends on whether [plaintiff] enjoyed a contractual relationship with [defendant], the existence of such a relationship is not a prerequisite to a court's power to adjudicate a breach-of-contract claim.

*Tang Cap. Partners, LP. v. BRC Inc.*, 661 F. Supp. 3d 48, 73 (S.D.N.Y. 2023) (quoting *SM Kids, LLC*, 963 F.3d at 211).

Because NASIC's argument against Plaintiff's standing relates to Plaintiff's right to enforce their contracts against Defendants, NASIC's motion to dismiss for lack of standing is properly reviewed as a motion under Fed. R. Civ. P. 12(b)(6), which applies to motions to dismiss for lack of contractual standing.  *See SM Kids*, 963 F.3d at 212 ("[A] party that alleges harm due to another's breach of contract has a justiciable controversy with the other party and [ ] the courts have jurisdiction to resolve the controversy."); *Buffalo Xerographix, Inc.* 2021 WL 2003110, at *5; *Toretto v. Donnelley Fin. Solutions, Inc.*, 523 F. Supp. 3d 464, 476 (S.D.N.Y. 2021) ("[B]y challenging the sufficiency of the allegations to plead a cause of action for breach of contract in the context of a Rule 12(b)(1) challenge to Plaintiffs' standing, Defendants again tempt the Court to conflate a merits inquiry with standing.").

Accordingly, this Court declines to review Plaintiff's motion pursuant to Fed. R. Civ. P. 12(b)(1) and will instead determine whether Plaintiff's claims survive NASIC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

### B.    The Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

The success of NASIC's motion to dismiss hinges on whether the Court will take judicial notice of NASIC's affidavit and exhibits filed in support of the motion to dismiss.  In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of

[the] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998); *see also Califano v. Roman Catholic Diocese of Rockville Centre*, No. 24-CV-04346 (AMD) (JMW), 2024 WL 4276170, at *5 (E.D.N.Y. Sept. 24, 2024) ("Documents outside the four corners of the pleading are ordinarily not to be considered on a motion to dismiss.").  But courts have interpreted this assessment broadly, so as to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  *Quality Door & Hardware, Inc. v. Stanley Sec. Sols., Inc.*, No. 19-CV-4574 (JS) (AKT), 2020 WL 6582010, at *3 (E.D.N.Y. Nov. 10, 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *see Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) (finding that courts are "required to look only to the allegations on the face of the complaint."); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (finding that a Court may also consider materials of which the plaintiff had notice and relied upon in framing the complaint, as well as materials of which judicial notice may be taken).

A document may be deemed incorporated by reference when a complaint attaches it as an exhibit or includes any statements from those documents.  *See New York Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 276 (S.D.N.Y. 2013).  To be incorporated, "the complaint must make a clear, definite and substantial reference to the document [ ]." *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 460 (S.D.N.Y. 2011) (citation and quotations omitted).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers*, 282 F.3d at 152-53.  "The most paramount interests at play when determining whether the evidence is integral to the claim are notice and

reliance." *Carrico, et al. v. Duo Wen, Inc.*, No. 23-CV-00927 (ALC), 2024 WL 3965839, at *2 (S.D.N.Y. Aug. 27, 2024) (citing *Chambers*, 282 F.3d at 153). Nevertheless, "mere notice or possession is not enough for a court to treat an extraneous document as integral to the complaint; the complaint must rely heavily upon the document's terms and effect for the document to be integral." *Carrico*, 2024 WL 3965839, at *2 (citing *Deluca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 54 (S.D.N.Y 2010)).

For judicial notice of an integral document to be taken, it must be clear on the record that no material dispute of fact exists regarding the "authenticity or accuracy of the document" or "the relevance of the document." *Carrico*, 2024 WL 3965839, at *2 (quoting *Deluca*, 695 F. Supp. 2d at 60)). "Even if a document [is integral to the complaint,] a court may still not consider it on a motion to dismiss if there is a dispute 'regarding the authenticity or accuracy of the document.'" *Id.* A court may only take "judicial notice of a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993). But district courts "need not resolve issues regarding peripheral documents' validity or accuracy on a motion to dismiss." *Carrico*, 2024 WL 3965839, at *3 (citation omitted).

NASIC's motion rests squarely on the content and terms of the Settlement Agreement and the Release. Indeed, in order to prevail, NASIC requests that the Court take judicial notice of the language in the Settlement Agreement purportedly governing the viability of Plaintiff's claims (Dkt. No. 24-5 at 7-8) along with the exact terms of the accompanying Release (*id.* at 8-9), which together "should be enforced." *Id.* at 11, 13. NASIC's motion also attaches as exhibits complete copies of the Release (Dkt. No. 24-3) and the Settlement Agreement (Dkt. No. 24-4) for the Court's

review.

The Court, however, finds that the exhibits attached in support of NASIC's motion are not judicially noticeable.  Because neither the Settlement Agreement nor the Release are integral to the Complaint, the Court may not take judicial notice of such documents.  *See Gambino v. Vill. of Freeport, NY,* No. 20-CV-3216 (MKB), 2022 WL 138065, at *4 (E.D.N.Y. Jan. 14, 2022) (declining to take judicial notice of a settlement agreement where "[p]laintiffs have not referenced the [a]greement in the [c]omplaint or attached it to the [c]omplaint, nor is the [a]greement integral to [p]laintiff's claims"); *Beede v. Stiefel Lab'ys, Inc.*, No. 1:13-CV-120 (MAD)(RFT), 2014 WL 896725, at *5 (N.D.N.Y. Mar. 6, 2014)(declining to take judicial notice of releases); Dkt. No. 25-4, at 24.

NASIC's argument to the contrary is unavailing.  NASIC points to Paragraph 140 of the Complaint where Plaintiff allegedly "acknowledges receipt of $876,000.00 from NASIC pursuant to the Settlement Agreement and further, that [Plaintiff] released NASIC."  Dkt. No. 24-5 at 10. But, as Plaintiff correctly argues, the "37-page Complaint, comprised of 242 separate allegations" is almost entirely devoted to outlining the existence of an agreement between Plaintiff and APS Defendants to deliver certain services and Plaintiff's expectation that payment for such service should have been remitted by the APS Defendants.  Dkt. No. 25 at 31.  The Complaint, in other words, sounds wholly in breach of a contract between Plaintiff and APS Defendants.  Dkt. No. 25 at 27-28.  Indeed, the Court does not find that Plaintiff heavily relied on the Settlement Agreement or the Release so as to render such documents integral to the Complaint.  *See Carrico*, 2024 WL 3965839, at *3.

Further, Plaintiff's reference to a settlement agreement and release (Dkt. No. 1 at ¶¶ 136-140) are not substantial enough to constitute incorporation by reference.  *See, e.g., Halbrecht v.*

*Prudential–Bache Properties, Inc.*, 90-CV-799 (JAC) 1992 WL 336757, at *11 (D. Conn.1991) (Cabranes, J.) ("Although the Complaint includes several references to the [Confidential Private Placement Memorandum], these references are not substantial enough to constitute incorporation by reference."); *see also Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) ("The documents here were to some extent quoted, but limited quotation does not constitute incorporation by reference."); *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (finding that a complaint's "brief reference" to a extraneous document in one paragraph "does not qualify as clear, definitely or substantial."); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) (citing *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir.2006) (finding a "scant reference" to an extraneous document "does not meet the high bar courts have set to recognize documents extraneous to a complaint as 'incorporated in it by reference.'")).  Whereas NASIC argues that Plaintiff had notice of the Settlement Agreement and Release (Dkt. No. 24-5, at 15), "mere notice or possession is not enough for a court to treat an extraneous document as integral to the complaint."  *Deluca,* 695 F. Supp. 2d 54, 54.

Additionally, this Court finds that Plaintiff has sufficiently contested the accuracy or authenticity of NASIC's exhibits.  *See Carrico*, 2024 WL 3965839, at *3.  Plaintiff asserts that the date NASIC "claims the parties entered into the Settlement Agreement . . . or the date listed on the Settlement Agreement offered by NASIC" is "different than the date alleged in the Complaint."  Dkt. No. 25 at 28.[4]  NASIC rebuffs Plaintiff's attack on the authenticity as "spurious and frivolous"

---

[4] Paragraph 140 of the Complaint reads "[*sic*] Or about March 15, 2019, NASIC and Prime entered into a settlement agreement, whereby, *inter alia*, NASIC paid Prime $876,000.00 for the Claim in exchange for Prime releasing NASIC from the Claim."  Dkt. No. 1 at ¶ 140.  In its opposition papers, Plaintiff claims that the Complaint states "on or about March 15, 2019," which is not fully accurate.  *See* Dkt. No. 25 at 28.  Plaintiff, however, correctly notes that NASIC claims that the parties entered into the Settlement Agreement on March 21, 2019 or, alternatively, April 1, 2019"—thereby underscoring the material dispute at issue.

as "there is no legitimate question as to the authenticity of the [extraneous documents]."  Dkt. No. 26 at 6.  But whether or not Plaintiff's objection to authenticity is "legitimate" (*id.*), "the requirement that there be 'no dispute' about the authenticity of documents 'integral' to the complaint 'has been interpreted strictly: even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible.'" *Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.*, No. 14-CV-2495 (ER), 2016 WL 4382709, at *7 (S.D.N.Y. Aug. 16, 2016).  Thus, though Plaintiff may have to eventually overcome any obstacle presented by the terms of any relevant agreement, their "challenge to the authenticity of the document" offered by NASIC—"even if dubious or questionable" (*id.*)— precludes the Court from taking judicial notice of the Settlement Agreement and Release on this motion to dismiss.  *See also Barberan v. Nationpoint,* 706 F. Supp. 2d 408, 415–16, n.4 (S.D.N.Y. 2010) (finding same, even where plaintiff's authenticity objections were "less than genuine" and of "questionable viability").

Ultimately, there is no dispute as to whether the extraneous documents are a matter of public record or have previously been filed in other actions.  In short, they are not.  Since they are not matters of public record and have not otherwise been filed in other litigation, these documents are not judicially enforceable.  *See, e.g., Cherniak v. Trans-High Corp.*, No. 18-CV-7734 (AT), 2020 WL 1047884, at *2 (S.D.N.Y. Mar. 4, 2020) (stating that "[t]he [c]ourt may not take judicial notice of the [a]greement, because it was not filed on the docket when the [previous action] was terminated, and is not otherwise available as a public record") (collecting cases); and *Cantey v. Mount Vernon City Sch. Dist.*, No. 16-CV-2669 (NSR), 2018 WL 3315574, at *4 (S.D.N.Y. July

---

*See id.*; *see* Dkt. No. 24-5 at 15 ("Prime's Complaint admits that Prime and NASIC entered into a Settlement Agreement dated March 21, 2019 which included as part thereof Prime's release of NASIC, in exchange for a payment in the amount of $876,000.00"); *see also* Dkt. No. 24-4 at 3.

5, 2018) (declining to take judicial notice of a settlement agreement on a motion to dismiss and converting the motion to summary judgment because the settlement agreement was "handled privately between the parties and not made accessible to the public"); and *Ranta v. City of New York*, No. 14-CV-3794 (SLT) (LB), 2015 WL 5821658, at *9 (E.D.N.Y. Sept. 30, 2015) (declining to take judicial notice of a general release of claims when there was "no indication" that the documents were "filed with a court and [were] a matter of public record"); with *Maspeth Fed. Sav. & Loan Ass'n v. Fid. Info. Servs., LLC*, 275 F. Supp. 3d 411, 413 n.1 (E.D.N.Y. 2017) (taking judicial notice of "relevant filings in the related class action lawsuit, . . . including the amended class action complaint and stipulation of settlement"); *but see Deylii v. Novartis Pharms. Corp.*, No. 13-CV-6669 (NSR), 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (taking judicial notice of class action settlement documents and stating that "[t]he [c]ourt may take judicial notice of public documents on a motion to dismiss to determine whether claims are barred by prior litigation" (internal citations omitted).

Further, even if this Court were to take judicial notice of the extraneous documents provided by NASIC in support of its motion, it is unclear whether the Release (and accompanying assignment) expressly bars Plaintiff's claims. The Release provided by NASIC in its Exhibit C appears to be an addendum to a Settlement Agreement purportedly executed between Plaintiff and NASIC. Dkt. No. 24-3. Section 3 of the Settlement Agreement required Plaintiff to execute the Release as a condition-precedent to "payment of the [s]ettlement [a]mount." *Id.* at 5. Section 6 of the Settlement Agreement denotes that the "Agreement represents a compromise of numerous matters *that are in controversy*." *Id.* at 6. Section 6 proceeds to note that the "purpose" of the Settlement Agreement is "to resolve such matters [in controversy] . . . ." *Id.* The Release however, notes that—in further consideration for the settlement amount—Plaintiff "release[s] and forever

discharge[s] [NASIC] from any and all claims and demand of every kind, character and description . . .” that Plaintiff may have.  *Id.* at 13.

Pursuant to the terms of the Settlement Agreement and Release, Plaintiff argues that the Settlement Agreement applied strictly to Plaintiff's claims “that were then in controversy, specifically, the sums then due by APS to [Plaintiff].”  Dkt. No. 25 at 17-18.  Plaintiff further asserts that the Settlement Agreement “could not have, and in fact, did not settlement monies that were not yet due.”  *Id.*  In sum, Plaintiff notes that the Settlement Agreement did not anticipate future claims that may have arisen from non-payment by APS.  NASIC disagrees and, relying on the terms of the Release, argues that the Release “completely resolved all of Plaintiff's claims against [NASIC].”  Dkt. No. 26 at 6.

The Court finds both arguments plausible.  On one hand, it is plausible to interpret the Release broadly as encompassing claims based on conduct arising after the execution of the release.  But on the other hand, the Release's role as an addendum to a Settlement Agreement whose defined purpose was to resolve all matters currently in controversy (Dkt. No. 24-3 at 6) restricts the universe of unasserted claims covered by the Release.  *See, e.g., Remington Rand Corp. v. Amsterdam–Rotterdam Bank*, N.V., 68 F.3d 1478, 1485 (2d Cir. 1995) (“Although the releases shield the [defendants] from any liability for any conduct through their effective dates, they do not protect the [defendants] from liability arising from any subsequent conduct.”); *Schneider v. Revici*, 817 F.2d 987, 993 (2d Cir.1987) (“To ‘release . . . from all liabilities can plausibly be understood only to relinquish claims currently existing, rather than to promise not to sue in the future on claims that may subsequently arise.”); *National Council of Young Israel v. Wolf*, 963 F. Supp. 276, 282 (S.D.N.Y.1997) (release would not be a complete defense to events subsequent to the execution of a general release).

Therefore, even if the extraneous documents provided by NASIC were judicially noticeable, the two plausible meanings ascribed to the Release render the Release ambiguous. Where both parties have offered reasonable interpretations regarding the scope of the release, such ambiguities cannot be resolved on a motion to dismiss. *See Info. Superhighway, Inc. v. Talk Am., Inc.*, 274 F. Supp. 2d 466, 471 (S.D.N.Y. 2003) (quoting *In re Clinton Street Food Corp.*, 254 B.R. 523, 535 (Bankr. S.D.N.Y. 2000)).

Accordingly, because the Court declines to consider the Settlement Agreement or the Release—which together formed the sole basis for NASIC's motion, this Court respectfully recommends that NASIC' motion to dismiss be denied. *See Gambino*, 2022 WL 138065, at *5 (denying motion to dismiss after declining to take judicial notice of extraneous documents forming the basis of the movant's motion).

## IV.    <u>CONCLUSION</u>

In light of the foregoing, the undersigned respectfully recommends that NASIC's motion to dismiss be **DENIED**.

A copy of this Report and Recommendation is being electronically served on counsel. Additionally, this Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail, and first-class mail to APS Contractors Inc., and Goce Blazeski and to file proof of service on ECF by October 1, 2024 at the following addresses:

APS CONTRACTORS INC.
27 EAST 33RD STREET
PATERSON, NJ, 07514

GOCE BLAZESKI
9 DYKERS FARM ROAD
NORTH HALEDON, NJ 07508

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Kuntz. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: Brooklyn, New York          **SO ORDERED.**
       October 1, 2024

                                        *s/ Joseph A. Marutollo*
                                        JOSEPH A. MARUTOLLO
                                        United States Magistrate Judge